


COG/MPP: 2021R00795

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | CRIMINAL NO. SAG-23-312 |
| | * | |
| v. | * | (Wire Fraud, 18 U.S.C. § 1343; Aiding |
| | * | and Abetting, 18 U.S.C. § 2; Attempt to |
| **LAWRENCE E. SMITH,** | * | Evade or Defeat Tax, 26 U.S.C. § 7201; |
| | * | Making a False Return 26 U.S.C. |
| Defendant. | * | § 7206(1)) |
| | ******* | |

## INDICTMENT

The Grand Jury for the District of Maryland charges:

At times relevant to this Indictment:

1. **LAWRENCE EARL SMITH**, ("**SMITH**") was a resident of Perry Hall, Maryland.

2. From in or about May 2005 until at least in or about August 2022, **SMITH** worked as a Baltimore City School Police Officer ("School Police Officer").

3. As a School Police Officer, **SMITH** was an employee of the City of Baltimore.

4. As a School Police Officer, **SMITH** was a member of the Baltimore City School Police Force and was authorized by law to make arrests.

5. As a School Police Officer, **SMITH** was authorized to act in an official capacity on the premises of schools and any other property used for educational purposes owned, leased, or operated by, or under the control of the Baltimore City Board of School Commissioners.

6. **SMITH** was not authorized to act in an official capacity on another property unless:

   a. Engaged in fresh pursuit of a suspected offender;

   b. Authorized to do so by the Police Commission of Baltimore City;

   c. The exercise of power was necessary to facilitate the orderly flow of traffic to and from property owned, leased, operation by, or under control of the Baltimore City School System; or

   d. He was ordered to do so by the Mayor of Baltimore City.

7. Some School Police Officers were "school based," *i.e.* permanently assigned to high schools located throughout Baltimore City. The high schools were patrolled by School Police Officers 24 hours a day, seven days a week. There were no School Police Officers permanently assigned to middle schools or elementary schools, but depending on officer availability, some School Police Officers patrolled middle and elementary schools on an as-needed-basis.

8. The City of Baltimore typically authorized overtime pay for School Police Officers under the following circumstances:

   a. Providing overtime work for Baltimore City Schools (*e.g.*, traditional patrol for the schools and other school activities such as sporting events and board meetings);

   b. Providing security at professional sporting events (*e.g.*, Ravens and Orioles games);

   c. Providing security at other Baltimore City community events and functions (*e.g.*, the Baltimore Running Festival, health clinics, festivals, concerts, election polling centers, conventions, and parades); and

   d. Providing security at Baltimore City Recreation and Parks pools.

9. During the COVID-19 pandemic, **SMITH** also was authorized to receive overtime pay to provide security for COVID testing sites and food sites set up at various Baltimore City Public School System schools and at Baltimore City Recreation and Parks community centers

when they were open to the public. **SMITH** also was authorized to receive overtime pay to provide security at a makeshift COVID "hospital" set up at the Lord Baltimore Hotel in Baltimore.

10. **SMITH** also was authorized to assist the Baltimore Police Department ("BPD") in its investigations and was authorized to receive overtime pay if he received a BPD request outside of his regular hours for "emergencies" and situations that required an immediate response.

11. The Baltimore City Public School System used Oracle Enterprise Business Suite ("Oracle"), an automated workflow system for timekeeping and payroll, including payment for overtime. The E-Forms consisted of School Police regular time forms and overtime slips, which were submitted by officers individually and were supposed to be subsequently approved by their respective supervisors.

12. Baltimore City Public School System employees could opt to receive paychecks through direct deposit, which involved the Baltimore City Public School System sending payment information to the originator's bank, then to a clearing house, and finally to the recipient's bank (the employee's bank), where the funds were deposited.

13. **SMITH** received biweekly wages as a School Police Officer from the City of Baltimore through a biweekly Automated Clearing House (ACH) payment.

14. **SMITH** was the account holder and sole signatory on an account at Bank of America ending in 5183 ("BOA 5183").

15. In or about 2016, **SMITH** was promoted from officer to detective, and was put in charge of the School Police Overtime Unit. In this role, **SMITH** managed the Overtime Unit and was responsible for the coordination and scheduling of School Police Officer overtime, including his own.

16. From in or about 2016 to in or about August 2022, **SMITH** acted as the liaison between School Police and various business and organizations, including but not limited to the BPD and the Downtown Partnership of Baltimore City (DPOB), which offered overtime opportunities to School Police.

17. From in or about 2016 to in or about August 2022, **SMITH** submitted invoices for overtime reimbursements to Baltimore City Recreation and Parks for pool security.

### The Scheme and Artifice to Defraud

18. From in and around January 2019 through in and around August 2022, in the District of Maryland, the defendant,

### LAWRENCE EARL SMITH,

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud the City of Baltimore, Maryland, the Baltimore City Board of School Commissioners, and the BPD, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, including the concealment and omission of material information, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343 (the "Scheme and Artifice to Defraud").

### The Purpose of the Scheme and Artifice to Defraud

19. The purpose of the Scheme and Artifice to Defraud was for **SMITH** to fraudulently obtain monies from the City of Baltimore by claiming overtime for which he had not worked and receving payments for unworked overtime.

## Manner and Means of the Scheme to Defraud

20. It was part of the Scheme and Artifice to Defraud that **SMITH** used his position as a School Police Officer to falsely claim that he worked overtime in the following capacities as a School Police Officer for Baltimore City Schools: to provide security at Baltimore City Recreation and Parks Pools during the summer months; to provide security at Baltimore City community events and functions; and during the COVID-19 pandemic, to provide security at COVID-19 meal sites, testing and vaccine centers, and the Lord Baltimore Hotel "hospital," all allegedly coordinated by the City of Baltimore.

21. It was further part of the Scheme and Artifice to Defraud that **SMITH** used his position as the Detective in charge of the Overtime Unit for School Police to assign himself to various overtime shifts.

22. It was further part of the Scheme and Artifice to Defraud that **SMITH** falsley claimed that he was working overtime as a School Police Officer when in fact he was at home, running personal errands, at other locations socializing, coaching football, and out of state on vacation.

23. It was further part of the Scheme and Artifice to Defraud that **SMITH** falsely claimed overtime for services allegedly provided at various school functions and security functions, including the following: Unified Tennis Championships and Awards Ceremony; High School Fair unloading at the Baltimore Convention Center, COVID-19 meal sites; COVID-19 testing sites, and the Lord Baltimore Hotel which functioned as a COVID-19 "hospital"; Patterson Park Pool; an Election Day detail; and a Baltimore City Recreation and Parks Patterson Pool detail.

24. It was further part of the Scheme and Artifice to Defraud that **SMITH** falsely claimed work from home overtime for services allegedly provided to other law enforcement

agencies, such as the BPD, the Baltimore County Police Department, and the Baltimore City State's Attorney's Office.

25. It was further part of the Scheme and Artifice to Defraud that **SMITH** submitted false overtime slips through Oracle, causing the City of Baltimore to authorize payments for work that **SMITH** did not perform.

26. It was further part of the Scheme and Article to Defraud that from at least August 2018 through in or about October 2022, **SMITH** caused the City of Baltimore to make direct deposits into the BOA 5183, which resulted in interstate wire communications.

## THE CHARGES

27. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

**LAWRENCE EARL SMITH,**

for the purpose of executing the Scheme and Artifice to Defraud and attempting to do so, did transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, and sounds, namely:

| Count | Approximate Date | Wire Transmission |
|---|---|---|
| 1 | 11/1/2019 | Direct Deposit of $1,683.39 to BOA 5183, which was in part based on **SMITH's** false and fraudulent representations regarding his work as a School Police Officer, and resulted in an interstate wire communication from Virginia to Maryland. |
| 2 | 12/13/2019 | Direct Deposit of $8,108.09 to BOA 5183, which was in part based on **SMITH's** false and fraudulent representations regarding his work as a School Police Officer, and resulted in an interstate wire communication from Virginia to Maryland. |
| 3 | 9/4/2020 | Direct Deposit of $6,150.48 to BOA 5183, which was in part based on **SMITH's** false and fraudulent representations regarding his |

|  |  | work as a School Police Officer, and resulted in an interstate wire communication from Virginia to Maryland. |
|---|---|---|
| 4 | 9/18/2020 | Direct Deposit of $366.17 to BOA 5183, which was in part based on **SMITH's** false and fraudulent representations regarding his work as a School Police Officer, and resulted in an interstate wire communication from Virginia to Maryland. |
| 5 | 11/13/2020 | Direct deposit of $7,297.78 to BOA 5183, which was in part based on **SMITH's** false and fraudulent representations regarding his work as a School Police Officer, and resulted in an interstate wire communication from Virginia to Maryland. |
| 6 | 6/25/2021 | Direct deposit of $4,956.56 to BOA 5183, which was in part based on **SMITH's** false and fraudulent representations regarding his work as a School Police Officer, and resulted in an interstate wire communication from Virginia to Maryland. |
| 7 | 8/20/2021 | Direct deposit of $4,162.44 to BOA 5183, which was in part based on **SMITH's** false and fraudulent representations regarding his work as a School Police Officer, and resulted in an interstate wire communication from Virginia to Maryland. |
| 8 | 4/1/2022 | Direct deposit of $2,755.07 and $485.43 to BOA 5183, which was in part based on **SMITH's** false and fraudulent representations regarding his work as a School Police Officer, and resulted in an interstate wire communication from Virginia to Maryland. |
| 9 | 6/10/2022 | Direct deposit of $3,423.44 to BOA 5183, which was in part based on **SMITH's** false and fraudulent representations regarding his work as a School Police Officer, and resulted in an interstate wire communication from Virginia to Maryland. |
| 10 | 7/8/2022 | Direct deposit of $6,398.27 to BOA 5183, which was in part based on **SMITH's** false and fraudulent representations regarding his work as a School Police Officer, and resulted in an interstate wire communication from Virginia to Maryland. |
| 11 | 7/22/2022 | Direct deposit of $5,565.50 to BOA 5183, which was in part based on **SMITH's** false and fraudulent representations regarding his work as a School Police Officer, and resulted in an interstate wire communication from Virginia to Maryland. |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNTS TWELVE – FOURTEEN
(Individual Taxes – Evasion (Assessment) – Spies Evasion)

1. The allegations of paragraphs 1 through 17 of Count One are realleged and incorporated herein as if set out in full herein.

2. An Internal Revenue Service ("IRS") Form W-4, Employee's Withholding Allowance Certificate or Employee's Withholding Certificate ("Form W-4"), was a form signed under penalty of perjury by a taxpayer to inform his employer of the amount of federal income tax to withhold from the taxpayer's wages, and it allowed a taxpayer to claim exemption from wage withholding upon meeting certain conditions.

3. For years 2016, 2017, 2019, and 2020, **SMITH** submitted and caused to be submitted, and maintained and caused to be maintained on file with the Baltimore City Public School System, false Forms W-4, including, but not limited to, the following:

| Approximate Date False Form W-4 Submitted | Years False Form W-4 Maintained with Employer |
|---|---|
| June 1, 2016 | 2016 |
| July 1, 2019 | 2019 |
| March 10, 2020 | 2020 |

4. On his Forms W-4, **SMITH** falsely claimed that he was exempt from federal income tax withholding when, in fact, he was not entitled to claim exempt status. By claiming exempt status, **SMITH** caused his employer to withhold little or no federal income taxes from his wages for years 2017, 2019, and 2020. **SMITH** continued to submit and maintain false Forms W-4 after the IRS directed Baltimore City Public School System to withhold taxes from his wages.

5. **SMITH** failed to file individual income tax returns for the years 2017, 2019, and 2020 and to report his wages and other income to the IRS.

6. During the calendar years set forth below, **LAWRENCE EARL SMITH** received taxable income, upon which there was substantial income tax due and owing to the United States

of America. Knowing the foregoing facts and failing to make an income tax return on or before the dates set forth below, as required by law, to any proper officer of the Internal Revenue Service, and to pay the income tax to the Internal Revenue Service, **LAWRENCE EARL SMITH** willfully attempted to evade and defeat income tax due and owing by him to the United States, for the calendar years set forth below, by, among other affirmative acts, submitting and causing to be submitted and maintaining and causing to be maintained on file with his Employers Forms W-4 on which he falsely claimed he was exempt from federal income tax withholding:

| COUNT | CALENDAR YEAR | RETURN DUE DATE |
|---|---|---|
| 12 | 2017 | April 17, 2018 |
| 13 | 2019 | July 15, 2020 |
| 14 | 2020 | May 17, 2021 |

26 U.S.C. § 7201

## COUNT FIFTEEN
### (Making a False Return)

1. The allegations of paragraphs 1 through 5 of Count Twelve are realleged and incorporated herein as if set out in full herein.

2. On or about April 15, 2019, in the District of Maryland, **LAWRENCE EARL SMITH**, a resident of Perry Hall, Maryland, did willfully make a false 1040 U.S. Individual Income Tax Return, for tax year 2018, which was verified by a written declaration that it was made under the penalties of perjury and which **LAWRENCE EARL SMITH** did not believe to be true and correct as to every material matter. That document, which the Defendant prepared and signed in the District of Maryland, which was filed with the Director, Internal Revenue Service electronically and stated in Schedule A line 5b that he paid $2,440 in state and local real estate taxes, whereas hem as he then and there knew, he paid no state and local real estate taxes for tax year 2018, and in Schedule A line 8b that he paid $43,203 in home mortgage interest, whereas, he then and there knew he had paid no mortgage interest in tax year 2018.

26 U.S.C. § 7206(1)

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of a defendant's conviction of any of the offenses charged in Counts One – Eleven.

2. Upon conviction of any of the offenses set forth in Counts One – Eleven of this Indictment, the defendant,

### LAWRENCE EARL SMITH

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

3. The property to be forfeited includes, but is not limited to, a money judgment in the amount of proceeds the defendant obtained as the result of his offenses of conviction and includes $215,352 from the fraudulent overtime wages.

### Substitute Assets

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C); 21 U.S.C. § 853(p); 28 U.S.C. § 2461(c)

*Erek L. Barron/cog*
Erek L. Barron
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**
Foreperson

9/7/23
Date