**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO. SAG-23-312** |
| **LAWRENCE SMITH,** | |
| **Defendant.** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government recommends that the Court sentence Defendant Lawrence Smith ("Defendant" or "Smith") to twenty-four months of imprisonment. While the City of Baltimore ("Baltimore"), Baltimore City Public Schools ("City Schools"), and the wider globe were suffering from the COVID-19 pandemic, Smith was enriching himself by lying to City Schools about his overtime hours. During a time of great economic uncertainty, while people were losing their jobs and wondering how they could afford to make ends meet, Smith was stealing hundreds of thousands of dollars from Baltimore and City Schools by pretending to do work he never did.

As a result of those lies, Smith raked in more than $215,000 from Baltimore for overtime hours that he never worked. Similarly, by making false statements on his Form W-4 and not filing any tax returns for the years 2017, 2018, and 2020, Smith falsely kept over $60,000 owed to the Internal Revenue Service ("IRS'). While his federal charges were pending, Smith continued to take funds from Harford County School Public Schools ("Harford Schools") based on his material omissions. Twenty-four months imprisonment is the just result for Smith's crimes and to accomplish the purposes of federal sentencing under 18 U.S.C. § 3553(a).

## I.      Factual Background[1]

### a.  Baltimore City School Police Officers, Overtime, and Defendant Lawrence Smith

From May 2005 until August 2022, the defendant Lawrence Smith was employed as a Baltimore City School Police Officer ("School Police"). School Police are employees of Baltimore and authorized by law to make arrests. As noted by former Chief of School Police Akil Hamm, "the School Police officer is still [a] law enforcement officer with the authority to handle crimes and make arrests and diversions when necessary." *See* Memo from Akil L. Hamm, Sr. to All School Police Sworn Personnel (November 29, 2016).[2] School Police should also take lead on serious criminal violations, including but not limited to, "offenses such as homicide, robbery, rape, [and] aggravated assault." *Id.*

Though, the "School Police Force's primary jurisdiction is school property . . . school police officers . . . can make arrests anywhere within the Baltimore city limits." Baltimore City Public School, School Police website, https://www.baltimorecityschools.org/page/school-police (last accessed on March 31, 2026).[3] According to former Chief Hamm, School Police should also be positive role models to students. Someone they can trust. "[S]ome ways for the School Police Officer to be a positive role model include: setting limits by being clear about what is acceptable and unacceptable; setting an example, [and] *being honest* . . . ." *Id.* at 4.

---

[1] This Factual Background section is consistent with the Stipulation of Facts in the Plea Agreement in this case.

[2] https://files-backend.assets.thrillshare.com/documents/asset/uploaded_file/3843/Bcps/48d27ab5-b475-4bc2-b3e0-3b7322ae91e5/2016-OfficerResponsibilities.pdf?disposition=inline  (last accessed on March 31, 2026).

[3] https://www.baltimorecityschools.org/page/school-police (last accessed on March 31, 2026).

School Police officers can earn overtime in several ways. These include (i) overtime work for Baltimore City Schools; (ii) providing security at professional sporting events; (iii) providing security at other Baltimore City community events and functions; and (iv) providing security at Baltimore City Recreation and Parks pools. During COVID-19, School Police officers had additional overtime opportunities, including to provide security for COVID-19 testing sites and food sites erected at various Baltimore City Public School system schools and Recreation and Parks community centers. There was also a "COVID hospital" at the Lord Baltimore Hotel in downtown Baltimore City.

Since approximately 2016, Smith was in charge of the Overtime Unit with School Police. As such, he had complete autonomy over the Overtime Unit and was responsible for coordinating and scheduling School Police overtime, *including his own*. In this way, Smith could and did assign himself overtime hours.

Smith was also a liaison between the School Police and various businesses and organizations, including the Baltimore Police Department and the Downtown Partnership of Baltimore City that offered overtime opportunities to School Police. Smith also submitted invoices for overtime reimbursements to Recreation and Parks for pool security and to the Maryland Stadium Authority for Ravens and Orioles games security.

Investigators initially learned from open-source data through the City Schools' website that from October 2019 to October 2020, at the height of the COVID-19 pandemic, Smith earned approximately $67,727 in overtime employment, making him the fourth highest overtime earner with School Police during that time frame. In addition, from October 2020 to October 2021, Smith earned approximately $94,484 in overtime employment. Smith was the highest overtime earner

with School Police during that span of time. Of note, during the pandemic, Smith's overtime earnings increased significantly compared to his pre-pandemic overtime earnings. *See below.*

| YEAR | SMITH'S WAGES | SMITH'S OVERTIME |
|---|---|---|
| 2019 | $53,565 | $19,828 |
| 2020 | $58,981 | $90,709 |
| 2021 | $56,815 | $85,243 |
| January – August 2022 | $34,426 | $56,976 |

### b. The Charged Conduct

While millions of people were dying of COVID-19 across the globe, Smith was taking advantage of the opportunity to steal overtime hours that he, in fact, never worked. Instead of being the honest School Police officer that former Chief Hamm called on him and others to be, Smith chose deception. Between January 2019 and August 2022, Smith fraudulently claimed over 3,330 hours of overtime. As a result, his false overtime earnings totaled approximately $215,352. The vast majority of these overtime shifts required Smith to be physically present. However, over the aforementioned time period, for each instance of fraudulent overtime claimed by Smith, he was often times at his residence in Baltimore County, in Grand Rapids, Michigan, or on his boat in or near the Patapsco River, among other places. Investigators often learned this information based on a historical analysis and comparison between Smith's cell phone location and the location of his claimed overtime work. However, sometimes Smith's own Facebook posts further confirmed that he lied about his overtime.

For example, Smith submitted an overtime slip dated Friday, July 30, 2021, at the Lord Baltimore Hotel from 4:00 p.m.-12:00 a.m., totaling eight hours of overtime in the amount of $393.96. Smith did not take leave on this date, and he was paid for a full day of work, in addition to the eight hours of overtime that he falsely claimed for working a physical security detail at the Lord Baltimore Hotel. However, Smith's historical cell site data showed the following: At

4

approximately 8:04 a.m., when he was supposed to be working during his regular shift, Smith was in the vicinity of Oasis Marinas at Lighthouse Point, 2780 Lighthouse Point E, Baltimore, MD 21224. Roughly thirty minutes later, he was in the vicinity of the Patapsco River/Boston Street Pier Park, Baltimore, MD 21224. By approximately 9:27 a.m., Smith was in the vicinity of the Patapsco River/Fell's Point/Canton. Later, around 11:03 a.m., he was in the vicinity of Boston Street Pier Park, Baltimore, MD 21224. Then, by mid-afternoon around 3:08 p.m., Smith was in the vicinity of 6500 Camden St, Baltimore, MD 21220. By approximately 5:37 p.m., he was at or near his residence in Baltimore County through 11:49 p.m.

Simultaneously, at 1:06 p.m., Smith unashamedly posted on his Facebook story "Relaxin!!" with two photos: one of himself on his boat and another of the Patapsco River/Chesapeake Bay. At 2:02 p.m., Smith posted "Lawrence Smith is with ███████ ███████" and he stated, "Morning on the bay!!!" with a photo of him and another individual on the boat. At 7:01 p.m., Smith posted, "Had a ball out there today! Docking is a challenge for me right now, and docking in the wind is the devil! Im [sic] up for the challenge!!"



5



On other occasions, specifically in February, April, May, and July 2022, Smith brazenly posted photos of himself on vacation, at times outside of the country, on days when he fraudulent claimed overtime and regular earnings.  Bottom line: Smith lied to obtain overtime funds that he never earned.

While stealing funds from Baltimore, Smith evaded the payment of taxes on both his legitimate earnings and fraudulent overtime funds. Smith did so by submitting false Forms W-4 to his employer that claimed exempt status while also failing to file tax returns. Specifically, Smith submitted those false W-4s on or around June 1, 2016, July 1, 2019, March 10, 2020, and June 1, 2022.  As a result, Smith's employer, at his direction through the false W-4, never withheld any payroll taxes. Simultaneously, Smith did not file his income tax returns for 2017, 2019, and 2020. As a result, between Smith's employer never withholding and paying over his federal and income taxes and Smith never filing tax returns during the aforementioned years, he evaded payment of his federal taxes.

## II. <u>Indictment and Plea Agreement</u>

On September 7, 2023, a federal grand jury charged Defendant Smith with 11 counts of wire fraud (18 U.S.C. § 1343), three counts of tax evasion (26 U.S.C. § 7201), and one count of making a false return (26 U.S.C. § 7206(1)) related to the underlying conduct. On October 17, 2025, Smith pleaded guilty to wire fraud (Count 1) and tax evasion (Count 12). In doing so, the defendant agreed that he defrauded the City of Baltimore during the COVID-19 pandemic by "claim[ing] more than 3,330 hours of fraudulent overtime, totaling at least $200,000 in fraudulent overtime earnings." ECF No. 55 at 11. He also agreed that he "evaded taxes for 2017, 2018, and 2020." *Id.* at 13. As a result of his tax evasion crime, Smith agreed to pay restitution to the IRS in the total amount of $61,233.40. *Id.* at 7. However, statutorily as described below, restitution to the City of Baltimore is also mandatory.

## III. <u>Conduct While Federal Charges Pending</u>

Subsequent to his initial appearance and arraignment on the federal indictment, Smith did not accurately disclose the nature of the pending charges with Harford County Public Schools ("Harford Schools"). *See* Ex. A at 7, Investigative Synopsis, Maryland Office of the Inspector General for Education ("OIGE") (January 28, 2026). According to the OIGE, Smith submitted three applications to Harford Schools: first, to be a substitute teacher on September 18, 2024; second, to be a Long-Term substitute teacher on November 26, 2024; and third, to be a Classroom Teacher on December 3, 2024. *Id.* at 4. In each application, Smith provided misleading responses when the applications asked for details related to any prior or pending charges. Specifically, according to the OIGE, the applications all asked "Have you ever been charged with a crime and/or are awaiting trial?" Although in each application, Smith answered "yes" to this question, in response to the request for details, in the case of the substitute teacher application, he only stated

7

that he was "[w]aiting to go to court for a tax case." *Id.* at 5. When asked for details on the other two applications, Smith "did not provide any details or explanation." *Id.*

As a result, OIGE found that "Smith failed to provide [Harford Schools] staff with accurate details of his pending 15-count federal indictment." In essence, he either completely omitted or "downplay[ed] the seriousness of the federal charges." *Id.* at 7. This conduct is not entirely dissimilar from the underlying facts of his federal convictions. To falsely obtain funds from these local governments and never pay money to the federal government, Smith was directly untruthful, made misrepresentations, or omitted material facts.

IV.    **Sentencing Guidelines Calculation**

The PSR notes that Defendant's Total Offense Level is 16. PSR ¶ 39. It reaches this conclusion after allocating a base offense level of 7 because the offense of conviction is one of "fraud and deceit" and has a statutory maximum term of imprisonment of 20 years or more. PSR ¶ 30; U.S.S.G. § 2B1.1(a)(1). Further, that offense level is increased by 10 points because the agreed upon loss amount is more than $150,000. PSR ¶ 31; U.S.S.G. § 2B1.1(b)(1)(F). The defendant also agreed to another enhancement of 2 points because he abused his position of public trust as a School Police officer. PSR ¶ 33; U.S.S.G. § 3B1.3. However, the Defendant accepted responsibility and timely notified authorities of his intention to plead guilty. PSR ¶¶ 37, 38. This led to a decrease of three points and a Total Offense Level of 16. PSR ¶ 39. Based on his criminal history and guidelines calculation, Smith's sentencing guidelines range for imprisonment is 21 to 27 months. PSR ¶ 90.

The parties do not dispute the current calculation; however, the government expects that Smith will argue at sentencing, as he already has in his sentencing memorandum, that he is a zero-point offender. At this time, the government does not take a position on this issue but will at

sentencing. Nonetheless, the PSR correctly states that Smith's Guidelines range will fall in Zone D and, thus, he is ineligible to be sentenced to a term of probation. PSR ¶ 98; see also U.S.S.G. §§ 5C1.1(f), cmt. 8 ([W]here the applicable guidelines range is in Zone D of the Sentencing Table . . . the minimum term must be satisfied by a sentence of imprisonment without the use of any of the imprisonment substitutes in subsection (e)), 5B1.1, cmt. 2. ("[W]here the applicable guidelines range is in Zone C or D of the Sentencing Table . . . the guidelines do not authorized a sentence of probation.").

## V.      **Restitution**

Restitution is mandatory and should be ordered. 18 U.S.C. § 3663A(a)(1) (the Mandatory Victims Restitution Act of 1996 (the "MVRA")) directs a sentencing court, when sentencing a defendant convicted of an offense involving, inter alia, fraud or deceit, to order "that the defendant make restitution to the victim of the offense"); USSG §5E1.1. Restitution shall be paid to victims for "the losses to the victim *caused by the offense.*" *United States v. Llamas*, 599 F.3d 381, 390–91 (4th Cir. 2010) (emphasis in original). Therefore, the defendant should be ordered to pay restitution in the amount of $215,352 to City Schools and $61,233.40 to the IRS.

## VI.     **Factors Set Forth in 18 U.S.C. § 3553(a)**

Under 18 U.S.C. § 3553(a), a sentencing court "shall impose a sentence sufficient, but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The sentencing court should consider various factors, including (among other things):[4]

- the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. §3553(a)(1));

- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate

---

[4] The Government has not copied the entirety of § 3553(a) into this sentencing memorandum.

deterrence to criminal conduct; and to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(A)-(C)); and

- the applicable sentencing guidelines range ((18 U.S.C. § 3553(a)(4)).

In this case, the § 3553(a) factors favor a sentence of twenty-four months of imprisonment. The government will address certain factors in the following sections.

### a. The Nature and Circumstances of the Offense ((a)(1)) and the Need for the Sentence Imposed to Reflect the Seriousness of the Offense ((a)(2)(A))

The conduct of this Defendant is particularly egregious. Using his position as the head of the Overtime Unit of the School Police, Smith fraudulently siphoned over $215,000 from Baltimore City Public Schools and the City of Baltimore while millions of people were struggling during the COVID-19 pandemic within the same city and across the globe. He took advantage of a system that entrusted him to be truthful. Instead of being a good steward of that trust, he took advantage of it. Importantly, if Smith truly was remorseful, he could have started to reimburse City Schools without a restitution order, but he has not. As a result, Smith's sentence should reflect the seriousness of his conduct.

### b. The History and Characteristics of the Defendant ((a)(1))

The Defendant is currently 52 years old and does not have a criminal record. Typically, it is unlikely that a defendant of this age would re-offend. However, based on OIGE's findings, it appears that Smith continues to obfuscate the truth in order to improperly receive funds from school systems in the state of Maryland. Moreover, misrepresentations and intentional material omissions to the IRS formed the basis of his tax charges. This shows a pattern of fraudulent behavior that the Court should take into account as it fashions Smith's sentence.

     c.   **The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct, to Protect the Public from Further Crimes of the Defendant, and the Need to Provide Restitution to Any Victims ((a)(2)(B), (C), and (a)(7))**

The sentence sought by the government reflects the seriousness of Smith's crimes and, particularly, the need for specific deterrence. Again, all of Smith's crimes and his subsequent relevant conduct are based on lies and omissions to the federal government and local governments to receive unearned funds. This was not a victimless crime. City Schools, who had put its trust in Smith, was harmed. And on top of that, he stole from the taxpayers. The Court's sentence should contemplate the need to specifically deter Smith's conduct in the future and protect other local governments and public-school systems from Smith's crimes.

These crimes of greed can be especially insidious because, without harsh sentences, people may believe that they are 'worth committing.' That one is unlikely to get caught, and even if you are caught, the punishment will be light. The Court should uphold general deterrence by showing the public that stealing money through overtime and tax fraud is not tolerated, that there are serious consequences to committing these crimes, and most of all, that these are not 'worth' doing.

The government is hopeful that a twenty-four month term of incarceration, followed by a period of supervised release, will finally end Smith's criminal conduct and provide him with an opportunity to rejoin society as a productive member. Such a sentence would be sufficient but not greater than necessary to accomplish the purposes of sentencing under the § 3553(a) factors.

Sincerely,

Kelly O. Hayes
United States Attorney

/s/
Adeyemi Adenrele
Jared Beim
Assistant United States Attorneys
District of Maryland